# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**MICHELLE R. WILLIAMS**                                              **PLAINTIFF**

**v.**                                  **CIVIL ACTION NO. 1:18-CV-236-KS-RHW**

**HUNTINGTON INGALLS INCORPORATED**                  **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

For the reasons below, the Court **grants** Defendant's Motion for Summary Judgment [38]. The Court will enter a Final Judgment in Defendant's favor in accordance with Rule 58.

The Court also **denies** Defendant's Motion to Strike [43] certain exhibits attached to Plaintiff's response. Rather than strike it, the Court orders the Clerk to **seal** Exhibit 4 to Plaintiff's Response, Docket No. 42-4.

## I. BACKGROUND

This is a Title VII case. Plaintiff has worked for Defendant since 2002 in various capacities, and she continues to work there now. During the times most relevant to this case, Plaintiff was an Electrical Foreman, managing a crew who worked on the wiring of a ship in construction. Plaintiff has alleged a variety of discriminatory and retaliatory actions across several years. Among other things, she alleges that she was assigned more work than her white male colleagues, and that after she complained about it, Defendant retaliated against her in various ways. Plaintiff seeks injunctive relief, and compensatory and punitive damages.

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### III. DISCUSSION

#### A. *Exhaustion of Administrative Remedies*

First, Defendant argues that any Title VII claim based on alleged discrimination or retaliation occurring before May 6, 2016, is time-barred. Before seeking judicial relief under Title VII, plaintiffs must "exhaust their administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission within 180 days of the alleged discrimination." *Davis v. Fort Bend County*, 893 F.3d 300, 303 (5th Cir. 2018) (citing 42 U.S.C. § 2000e-5(e)(1)). "This time limit operates as a statute of limitations," *Hood v. Sears Roebuck and Co.*, 168 F.3d 231, 232 (5th Cir. 1999), and "[i]f an EEOC charge is untimely filed, a suit based upon the untimely charge should be dismissed." *Wilson v. Secretary, Dep't of Veterans Affairs*, 65 F.3d 402, 404 (5th Cir. 1995). A charge is considered filed "when the EEOC receives the document." *Owens v. Dallas County Cmty. College Dist.*, -- F. App'x -- , 2019 WL 6726163, at *2 (5th Cir. Dec. 10, 2019) (citing 29 C.F.R. § 1601.13).

In her Complaint [1-2], Plaintiff alleged that she filed a charge of discrimination with the EEOC in August 2016. *See* Complaint at 2-3, *Williams v. Huntington Ingalls Inc.*, No. 1:18-CV-236-KS-RHW (S.D. Miss. July 16, 2018), ECF No. 1-2. However, Plaintiff signed the charge on October 27, 2016, and the EEOC did not receive it until November 2, 2016. *See* Exhibit 1 to Motion for Summary Judgment, *Williams v. Huntington Ingalls Inc.*, No. 1:18-CV-236-KS-RHW (S.D. Miss. July 16, 2018), ECF No. 38-1. In briefing, Plaintiff did not offer an explanation

3

for this discrepancy or dispute the dates on her EEOC charge. Therefore, the Court concludes that Plaintiff did not file a charge of discrimination until November 2, 2016, and any allegedly discriminatory or retaliatory conduct occurring before May 6, 2016 – 180 days before November 2, 2016 – is time-barred.

Plaintiff argues that she was required to file a charge within 300 days of the alleged discriminatory conduct. Plaintiff is mistaken. The charge must be filed "within 180 days of the alleged discrimination," *Davis*, 893 F.3d at 303 (citing 42 U.S.C. § 2000e-5(e)(1)), unless Plaintiff "initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto." 42 U.S.C. § 2000e-5(e)(1). Here, Plaintiff did not initially institute proceedings in any "State or local agency," and the 180-day time limit applies. *See, e.g. White v. Dallas Indep. Sch. Dist.*, 566 F.2d 906, 907-09 (5th Cir. 1978); *Bailey v. Fitzgeralds Mississippi, Inc.*, 2000 WL 991575, at *3 (N.D. Miss. July 10, 2000).

Plaintiff also suggests that the "continuing violation" doctrine applies, extending the time period of actionable discrimination and retaliation. Under a continuing violation theory of recovery, "a plaintiff is relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period, if the plaintiff can show a series of related acts, one or more of which falls within the limitations period." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004). This doctrine only applies "if it can be shown that the discrimination manifested itself over

4

time, rather than in a series of discrete acts." *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-12, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002) (discrete discriminatory and retaliatory acts occur on the day they happen, even if they are connected to other acts). Plaintiff has not alleged a series of related acts manifesting over time. Rather, she has alleged numerous discrete acts of discrimination or retaliation. Therefore, the continuing violation doctrine does not apply.

For these reasons, the Court grants Defendant's Motion for Summary Judgment with respect to any alleged discriminatory and/or retaliatory acts which occurred before May 6, 2016.

## B. *Count I – Racial Discrimination*

Defendant also argues that Plaintiff's racial discrimination claim in Count I of the Complaint is time-barred. In Count I, Plaintiff alleged that she "was assigned and tasked with the most work load than her peers who were . . . all" white men "during the time period of November 3, 2014, through December 6, 2015." Complaint [1-2], at 11. She also alleged that she "received the lowest merit incentive . . . from management team than her peers," who were all white men, "during the time period of November 3, 2014 through December 6, 2015." *Id.* Finally, she alleged that she "was tasked to complete and closed out the most work than peers," who were all white men, "during the time period of November 3, 2014, through September 9, 2015." *Id.* at 12.

5

These allegations plainly concern discriminatory acts which occurred before May 6, 2016. Therefore, for the same reasons provided above, the Court finds that they are time-barred and grants Defendant's Motion for Summary Judgment as to Count I.

## C. *Count II – Sex Discrimination*

Defendant also argues that Plaintiff's sex discrimination claim in Count II of the Complaint is time-barred. Count II shares the same factual allegations as Count I. Complaint [1-2], at 11-12. Therefore, for the same reasons provided above, the Court finds that Plaintiff's sex discrimination claims in Count II are time-barred and grants Defendant's Motion for Summary Judgment as to those claims.

## D. *Count III -- Retaliation*

Plaintiff alleged numerous retaliatory acts. Defendant argues that the Court should grant summary judgment as to each one.

### 1. *"Unethical Behaviors"*

First, Plaintiff alleges that she "was instructed to perform unethical behaviors by management team." Complaint [1-2], at 12. Defendant argues that any retaliation claim arising from this allegation is time-barred. Defendant presented evidence that this occurred in September 2015. Exhibit 5 to Motion for Summary Judgment at 2, *Williams v. Huntington Ingalls Inc.*, No. 1:18-CV-236-KS-RHW (S.D. Miss. Dec. 3, 2019), ECF No. 38-5. In fact, Plaintiff admitted during her deposition that this occurred in September 2015. Exhibit 3 to Motion for Summary Judgment at 46-48,

6

*Williams v. Huntington Ingalls Inc.*, No. 1:18-CV-236-KS-RHW (S.D. Miss. Dec. 3, 2019), ECF No. 38-3. Plaintiff does not dispute in briefing that this occurred in 2015. Therefore, for the same reasons provided above, the Court finds that any Title VII retaliation claim arising from these actions is time-barred, and the Court grants Defendant's Motion for Summary Judgment as to such claims.

2. *"Disturbing E-Mails"*

Next, Plaintiff alleges that she "received disturbing e-mails from upper management that were very unprofessional." Complaint [1-2], at 12. Defendant argues that this retaliation claim is also time-barred, and it presented evidence that the two e-mails in question were sent in August and December 2015. Exhibit 3 [38-3], at 26-28, 51-54; Exhibit 6 to Motion for Summary Judgment, *Williams v. Huntington Ingalls Inc.*, No. 1:18-CV-236-KS-RHW (S.D. Miss. Dec. 3, 2019), ECF No. 38-6; Exhibit 7 to Motion for Summary Judgment, *Williams v. Huntington Ingalls Inc.*, No. 1:18-CV-236-KS-RHW (S.D. Miss. Dec. 3, 2019), ECF No. 38-7. It appears to be undisputed that the e-mails were sent and received in 2015. Therefore, for the same reasons provided above, the Court finds that any Title VII retaliation claim arising from these e-mails is time-barred, and the Court grants Defendant's Motion for Summary Judgment as to such claims.

3. *"Original Scope of Work"*

Plaintiff also alleges that her "original scope of work assigned was taken away and given to another foreman." Complaint [1-2], at 12. Defendant argues that

7

Plaintiff has no evidence that the change in Plaintiff's work assignment was an adverse employment action, or that it was caused by her protected activity.

To make out a *prima face* case of retaliation under Title VII, Plaintiff must prove that "(1) she engaged in activity protected under Title VII, (2) an adverse employment action occurred, and (3) there was a causal connection between her protected activity and the adverse employment decision." *Gardner v. CLC of Pascagoula, LLC*, 915 F.3d 320, 327-28 (5th Cir. 2019).

Title VII retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *Royal v. CCC & R Tres Arboles, LLC*, 736 F.3d 396, 400 (5th Cir. 2013). Under the first step of this framework, "the plaintiff must , , , present evidence of a prima facie case of" retaliation. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011). If the plaintiff presents such evidence, "discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004). "The employer's burden is one of production, not persuasion, and does not involve a credibility assessment." *Black v. Pan Am Labs., LLC*, 646 F.3d 254, 259 (5th Cir. 2011). If the defendant can articulate a legitimate, nondiscriminatory reason for the underlying employment action, the presumption of discrimination disappears, and the plaintiff must prove that the employer's "stated explanation . . . was mere pretext." *Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019).

It appears to be undisputed that the change in work assignment of which Plaintiff complains occurred in May 2016. Rachel Lee, an African-American woman, became the General Foreman to whom Plaintiff, an Electrical Foreman, reported in May 2016. Exhibit 10 to Motion for Summary Judgment at 1, *Williams v. Huntington Ingalls Inc.*, No. 1:18-CV-236-KS-RHW (S.D. Miss. Dec. 3, 2019), ECF No. 38-10. Lee stated that some of the wiring on the ship's combat systems that had been done by Plaintiff's crew "had to be reworked by other electricians." *Id.* at 2. Therefore, Lee assigned the combat systems to another crew (led by an African-American man), and tasked Plaintiff's crew with "IC hook-up work." *Id.* However, "[t]here were times . . . that both crews performed other types of hook-up work." *Id.* All of the work – regardless of which ship systems the crews were working on – fell within the scope of an Electrical Foreman's job duties. *Id.* In Lee's words: "They are not different jobs; they are just different work assignments. The compensation and hours are the same." *Id.* Lee affirmatively stated that she did not reassign Plaintiff's crew because of Plaintiff's race or sex, or because of any complaints she had made in the past. *Id.* at 3. Rather, she "assigned the work . . . based on their experience and abilities as foremen, nothing else." *Id.*

In the context of a Title VII retaliation claim, an adverse employment action is any action "that a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable work from making or supporting a charge of discrimination." *Aryain v. Wal-Mart Stores*

*Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008). Plaintiff has not presented any evidence – or even argued – that being reassigned from one type of wiring hook-up work to another would prevent a reasonable employee from making a charge of discrimination. She has not provided any evidence that the two work assignments were materially different. Therefore, the Court concludes that this was not an adverse employment action within the context of a Title VII retaliation claim, and it may not form the basis of a retaliation claim.

    4.    *Second Shift*

Plaintiff alleges that she "was assigned to 2nd shift to work." Complaint [1-2], at 12. Among other things, Defendant argues that Plaintiff can not prove that the shift reassignment was because of any protected activity. To make out a *prima facie* case of retaliation, "a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." *Garcia*, 938 F.3d at 243. However, at the pretext stage of the analysis, "[t]o establish the requisite causal connection between the protected activity and the adverse employment action, a plaintiff must show that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 757 (5th Cir. 2017); *Garcia*, 938 F.3d at 243-44. In other words, the plaintiff must prove "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013).

"[T]emporal proximity alone is insufficient to prove but-for causation." *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007). "But the combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment." *United States ex rel. King v. Solvay Pharms., Inc.*, 871 F.3d 318, 334 (5th Cir. 2017).

Here, Plaintiff has not even provided enough evidence to meet her initial, *prima facie* burden. In briefing, Plaintiff baldly asserted that Defendant assigned her to a different shift in retaliation for Plaintiff's complaints. However, she did not identify any specific protected activity. In fact, during her deposition, Plaintiff admitted that she did not know who made the decision to move her crew to the night shift. Exhibit 3 [38-3], at 38. But she testified that she was told that they needed "somebody to do some hookup to get the items ready for float-off," *id.* at 41, which, in her own words, "is a critical event." *Id.* at 41. In short, Plaintiff has not identified any evidence whatsoever – or even presented a coherent argument – that her crew was transferred to a different shift in retaliation for her protected activity.

In contrast, Defendant presented a sworn declaration from Albert Williams, an African-American man who is an Administration Manager for Defendant. Exhibit 11 to Motion for Summary Judgment at 1, *Williams v. Huntington Ingalls Inc.*, No. 1:18-CV-236-KS-RHW (S.D. Miss. Dec. 3, 2019), ECF No. 38-11. He stated:

> In August, we were in a phase of the production schedule that required many workers to be on the ship at once. The passageways and electronics compartments were especially crowded, so I decided to move several crews to the second shift. This decreased the number of workers

11

on the ship during the first shift, allowed workers on the second shift to work with fewer interruptions, and increased the productivity of workers on both shifts.

*Id.* According to Williams, he explained to Plaintiff that the shift transfer would be temporary. *Id.* at 2. In October 2016, Williams "learned that [Plaintiff] had accepted a new position in the Planning Department." *Id.* He stated that he did not want to prevent her from taking the new position, but he needed a certain percentage of scheduled wiring work completed. *Id.* So, he retained her and her crew briefly, and once they completed the necessary work, he was able to release Plaintiff to her new position and transfer all relevant personnel back to the first shift. *Id.* According to Williams, his decisions in this matter "were based on how we could best finish the electrical work that had to be completed . . . in accordance with the applicable budget and schedule." *Id.* at 3.

Plaintiff has not presented any evidence to dispute this nondiscriminatory explanation, or that the shift reassignment was because of her protected activity. Therefore, the Court finds that summary judgment in Defendant's favor is appropriate as to this aspect of her claims.

    5.    *Overtime*

Plaintiff also alleges that her managers denied her overtime. Complaint [1-2], at 12. Once again, it appears to be undisputed that this occurred before the actionable time frame. Defendant presented undisputed evidence that this occurred in June 2015. Exhibit 8 to Motion for Summary Judgment, *Williams v. Huntington Ingalls*

*Inc.*, No. 1:18-CV-236-KS-RHW (S.D. Miss. Dec. 3, 2019), ECF No. 38-8. Therefore, for the same reasons provided above, the Court finds that any Title VII retaliation claim arising from the allegedly denied overtime is time-barred, and the Court grants Defendant's Motion for Summary Judgment as to such claims.

The Court also notes that Plaintiff admitted in her deposition that she received the overtime pay. Exhibit 3 [38-3], at 57. She has not provided any evidence that she was actually denied overtime pay.

6. *Mentoring Program*

Plaintiff alleges that Defendant denied her "the opportunity into the Management Mentoring Program . . . ." Complaint [1-2], at 12. Defendant argues, among other things, that Plaintiff has no evidence that her exclusion from this mentoring program was caused by her protected activity. In response, Plaintiff presented no evidence of causation. In fact, during her deposition, Plaintiff admitted that her voluntary transfer to a position in the planning department rendered her ineligible for the management mentoring program. Exhibit 3 [38-3], at 60. John Sullivan, the individual who made the selections, stated in an e-mail to her: "You put in an excellent application, and it is evident that you have a lot of Ingalls leaders in your corner. However, between the time that we solicited applications and the time that the applications were reviewed, your change in positions dropped you outside the program requirements . . . ." Exhibit 12 to Motion for Summary Judgment, *Williams v. Huntington Ingalls Inc.*, No. 1:18-CV-236-KS-RHW (S.D. Miss. Dec. 3,

13

2019), ECF No. 38-12. Therefore, the Court finds that Plaintiff has failed to present any evidence that Defendant's failure to select her for the mentoring program was caused by her protected activity.

7.   *False Allegations in Employee Records*

Finally, Plaintiff alleges that Defendant entered "false allegations in [her] employee records." Complaint [1-2], at 12. The human resources complaint form to which Plaintiff refers is dated September 2015. Exhibit 9 to Motion for Summary Judgment at 1, *Williams v. Huntington Ingalls Inc.*, No. 1:18-CV-236-KS-RHW (S.D. Miss. Dec. 3, 2019), ECF No. 38-9. It was entered into the relevant database in October 2015. *Id.* at 6. Therefore, for the same reasons provided above, the Court finds that any Title VII retaliation claim arising from the allegedly false information in Plaintiff's employee records is time-barred, and the Court grants Defendant's Motion for Summary Judgment as to such claims.

### IV. CONCLUSION

For all these reasons, the Court **grants** Defendant's Motion for Summary Judgment [38]. The Court will enter a Final Judgment in Defendant's favor in accordance with Rule 58.

The Court also **denies** Defendant's Motion to Strike [43] certain exhibits attached to Plaintiff's response. Plaintiff apparently submitted personnel records which were subject to the Court's Protective Order [32] in response to Defendant's Motion for Summary Judgment. The records include the compensation history of

other employees who are not parties to this action. Therefore, the Court finds that – rather than being stricken from the record – they should be sealed. The Court orders the Clerk to **seal** Exhibit 4 to Plaintiff's Response, Docket No. 42-4.

SO ORDERED AND ADJUDGED this 3rd day of February, 2020.

                                          /s/   Keith Starrett
                                        KEITH STARRETT
                            UNITED STATES DISTRICT JUDGE